# `IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DARRELL CHRISTIAN,** | ) | |
| Plaintiff, | ) | Case No. 2:08cv00047 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

The plaintiff, Darrell Christian, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"). *See* 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2009). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

-1-

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Christian protectively filed his applications for DIB and SSI on June 28, 2005, alleging disability as of November 1, 1999, due to back pain, leg pain and joint deterioration. (Record, ("R."), at 50-55, 77.) The claims were denied initially and upon reconsideration. (R. at 35-42.) Christian then requested a hearing before an administrative law judge, ("ALJ"). (R. at 33-34.) The ALJ held a hearing on September 27, 2006, at which Christian testified and was represented by counsel. (R. at 135-55.)

By decision dated October 19, 2006, the ALJ denied Christian's claims. (R. at 16-23.) The ALJ found that Christian met the disability insured status requirements of the Act for DIB purposes through September 30, 2007. (R. at 18.) The ALJ also found that Christian had not engaged in substantial gainful activity since the alleged onset of disability on November 1, 1999. (R. at 18.) The ALJ determined that the medical evidence established that Christian suffered from a severe combination of impairments, namely cervical, thoracic and lumbar strain with mild degenerative joint disease of the knees, hands and feet. (R. at 18-19.) However, the ALJ found that Christian did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) Additionally, the ALJ found that Christian had the residual functional capacity to

-2-

perform medium work.[1] (R. at 20-22.) Because Christian's past relevant work experience as a farmer/heavy equipment operator required heavy exertion,[2] the ALJ found that he was unable to perform any of his past relevant work. (R. at 22.) Based on Christian's age, education, work experience and residual functional capacity, as well as the testimony of a vocational expert, the ALJ determined that there was a significant number of jobs existing in the regional and national economy Christian could perform. (R. at 22.) These occupations included a food preparer, an assembler, a bagger and a laborer. (R. at 22.) Therefore, the ALJ concluded that Christian was "not disabled" as defined in the Act and was not entitled to DIB or SSI benefits. (R. at 23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2008).

After the ALJ issued the decision, Christian pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 4-8.) Christian then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). This case is before the court on Christian's motion for summary judgment, which was filed on January 30, 2009, and on the Commissioner's motion for summary judgment, which was filed on March 4, 2009.

---

[1]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, he also can perform sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(b) (2008).

[2]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can perform heavy work, he also can perform medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2008).

## *II. Facts*

Christian was born in 1951, (R. at 50), which classifies him, as of the hearing date, as a person of "advanced age" under 20 C.F.R. §§ 404.1563(e), 416.963(e). He has a seventh-grade education, (R. at 80), and past work experience as a fast food cook, as well as a farmer and a heavy equipment operator. (R. at 77-78.)

Cathy Sanders, a vocational expert, also was present and testified at Christian's hearing. (R. at 151-54.) Sanders identified Christian's past work as a farmer and a heavy equipment operator as skilled and heavy work with no transferrable skills. (R. at 151-52.) Sanders was first asked to consider an individual of Christian's age, education and work experience who had the residual functional capacity described in Dr. Humphries's report. (R. at 152.) Sanders testified that such an individual could perform a restricted range of medium work with limits on stooping and crawling. (R. at 152.) Specifically, Sanders testified that such an individual could perform the jobs of a food preparer, an assembler, a bagger and a nonconstruction laborer. (R. at 152.) The ALJ then asked Sanders to consider the same hypothetical individual, but who was restricted as set forth in Dr. Shirish Shahane's physical residual functional capacity assessment. (R. at 152-53.) Sanders testified that such an individual could perform some light work,[3] including jobs as a nonconstruction laborer, a food preparer, a packer, a hand packager, a parking lot attendant, a ticket clerk, some varieties of sorters, a flagger, a greeter and a host. (R. at 152-53.) The ALJ next asked Sanders to consider the same hypothetical individual, but who was limited as set forth in psychologist Lanthorn's evaluation. (R. at 153.) Sanders testified that such an

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

-4-

individual could not perform any employment. (R. at 154.) Finally, the ALJ asked Sanders whether an individual with the limitations testified to by Christian could work. (R. at 154.) Sanders testified that such an individual could perform no jobs. (R. at 154.)

In rendering his decision, the ALJ reviewed medical records from Dr. William Humphries, M.D.; Dr. Shirish Shahane, M.D., and Dr. Thomas Phillips, M.D., state agency physicians; and B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist.

Dr. William Humphries, M.D., examined Christian on August 23, 2005, for his complaints of neck, mid-back and lower back pain, as well as shoulder and knee pain. (R. at 111-15.) During this exam, Dr. Humphries described Christian as an "alert and pleasant" individual who "relates well to the examiner and is cooperative...." (R. at 112.) Dr. Humphries also noted a "slightly reduced" range of motion in the neck with tenderness in the cervical spine area. (R. at 112.) He found "moderately reduced" range of motion of the back with tenderness to palpation from the mid-thoracic area to the lumbar paraspinous musculature. (R. at 112.) Straight leg raise testing was negative to 90 degrees bilaterally. (R. at 112.) Dr. Humphries also observed some synovial thickening in the joints of fingers on both hands, as well as mild synovial thickening in the ankle of the right foot. (R. at 113.) Joint range of motion of both the upper and lower extremities was full without tenderness. (R. at 113.) No significant venous stasis changes were noted, and Christian's dorsalis pedis pulses and posterior tibials were 1 to 2+ and equal. (R. at 113.) Christian's grip, radial, median and ulnar nerve functions were intact bilaterally, and his gait was within normal limits. (R. at 113.) Christian exhibited normal strength in all extremities with a slightly reduced,

but symmetrical, muscle mass in all extremities. (R. at 113.) Deep tendon reflexes were absent in both biceps and 1+ and equal in both triceps and brachioradialis. (R. at 113.) Deep tendon reflexes were trace in both knees and 1+ and equal in both ankles. (R. at 113.) Dr. Humphries noted no specific motor or sensory loss in the extremities. (R. at 113.) Dr. Humphries concluded that Christian suffered from post-traumatic cervical, thoracic and lumbar strain, mild degenerative joint disease in both knees and mild to moderate degenerative joint disease in both hands and feet. (R. at 114.) Dr. Humphries opined that Christian was limited to sitting, standing and walking six hours in an eight-hour workday and that he could lift items weighing up to 50 pounds occasionally and up to 25 pounds frequently. (R. at 114.) Dr. Humphries imposed no restrictions on Christian's climbing, stooping, kneeling, crouching or crawling abilities. (R. at 114.) However, Dr. Humphries prefaced this finding with the caveat that, should tests reveal degenerative joint disease or degenerative disc disease in the spine, Christian would be limited to lifting items weighing up to 25 pounds occasionally[4] and lifting items weighing up to 10 pounds frequently[5] with occasional stooping and crouching. (R. at 114.) Dr. Humphries imposed no restrictions on working around heights, hazards or fumes. (R. at 114.) The subsequent spinal imaging produced evidence of anterior and lateral osteophytes in the mid- and lower lumbar spine, narrowing of two disc spaces and slight lumbar scoliosis convexity right. (R. at 116.)

On August 31, 2005, Dr. Shirish Shahane, M.D., a state agency physician,

---

[4] Occasional means occurring from very little up to one-third of an eight-hour workday (cumulative, not continuous). (R. at 118.)

[5] Frequently means occurring from one-third to two-thirds of an eight-hour workday (cumulative, not continuous). (R. at 118.)

completed a physical residual functional capacity assessment, finding that Christian could perform medium work. (R. at 118-24.) Dr. Shahane found that Christian could frequently balance and occasionally climb, stoop, kneel, crouch and crawl. (R. at 120.) Dr. Shahane imposed no manipulative, visual, communicative or environmental limitations. (R. at 120-21.) Specifically, Dr. Shahane noted Dr. Humphries's finding of "slightly reduced" range of motion and tenderness in the cervical spine area of the neck. (R. at 123.) Similarly, he noted Dr. Humphries's finding that Christian exhibited a "moderately reduced" range of motion and tenderness in his back. (R. at 123.) Dr. Shahane also noted Dr. Humphries's finding that Christian had a full range of motion in his upper extremities with mild synovial thickening in certain joints and that his lower extremities were assessed similarly with some mild synovial thickening occurring in his right ankle joint. (R. at 123.) Dr. Shahane also recited the results of the subsequent x-ray, and he found that Christian's allegations were "partially credible." (R. at 123.) Dr. Thomas Phillips, M.D., another state agency physician, affirmed Dr. Shahane's assessment on October 28, 2005. (R. at 122.)

B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, conducted a psychological evaluation of Christian on September 22, 2006, at the request of Christian's attorney. (R. at 125-31.) Lanthorn conducted a mental status evaluation and social history, and he administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"). (R. at 125.) During the mental status evaluation, Lanthorn noted a "flat and blunt" affect, with Christian speaking in a "low monotone." (R. at 127.) Lanthorn also commented on Christian's "low frustration tolerance" during the exam, which increased Christian's anxiety and lowered his "performance and ability to function." (R. at 127.) Lanthorn characterized Christian's mood as "somewhat of

an agitated depression" with "mild tremulousness to his hands." (R. at 128.) Christian also was "often fidgety, made erratic eye contact, and was restless in his chair," even rising occasionally to "apparently seek relief from the pain." (R. at 128.) Lanthorn also noted that Christian described himself as "depressed, despondent, often irritable, and prefers to be alone." (R. at 128.) Christian also reported no "homicidal or suicidal ideation, plans, or intent," but "frequently feels like crying or will cry" when alone. (R. at 128.)

On the WAIS-III test, Christian obtained a verbal IQ score of 80, a performance IQ score of 86 and a full-scale IQ score of 81. (R. at 129.) These results placed him in the low average range of current intellectual functioning with a "moderately clinically significant disparity" in performance IQ topping his verbal IQ, which Lanthorn claimed is often present in individuals with learning disabilities and/or tendencies to behaviorally act out. (R. at 129.) Lanthorn diagnosed Christian with a major depressive disorder, recurrent, moderate or greater; anxiety disorder with generalized anxiety due to chronic physical difficulties, pain, etc.; pain disorder associated with both psychological factors and general medical conditions; alcohol dependence in sustained full remission (i.e. by claimant's self-report); borderline intellectual functioning; and a Global Assessment of Functioning score, ("GAF"), of 50-55.[6] (R. at 130.)

---

[6]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32. A GAF score of 51-60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

Lanthorn also completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental), finding that Christian had no useful ability to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to understand, remember and carry out complex job instructions, to relate predictably in social situations or to demonstrate reliability. (R. at 132-33.) Lanthorn noted a seriously limited, but not precluded, ability to relate to co-workers, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed, but not complex, job instructions, to behave in an emotionally stable manner and to maintain personal appearance. (R. at 132-33.) Finally, Lanthorn concluded that Christian possessed a limited, but satisfactory, ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 132-33.) Lanthorn opined that Christian would not be able to function mentally in a 40-hour-a-week job on a regular basis. (R. at 131.) However, Lanthorn found that Christian could manage benefits in his best interest. (R. at 133.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in

this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. The Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in significant numbers in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated October 19, 2006, the ALJ denied Christian's claims. (R. at 16-23.) The ALJ determined that the medical evidence established that Christian suffered from severe impairments including cervical, thoracic and lumbar strain with mild degenerative disc disease of the knees, hands and feet. (R. at 18-19.) However, the ALJ found that Christian did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) The ALJ found that Christian had the residual functional capacity to perform medium work. (R. at 20-22.) Thus, the ALJ found that Christian was unable to perform any of his past relevant work. (R. at 22.) Based on Christian's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined that significant numbers of jobs existed in the

regional and national economies that Christian could perform, including those of a food preparer, an assembler, a bagger and a laborer. (R. at 22.) Therefore, the ALJ concluded that Christian was not under a disability as defined in the Act and was not entitled to DIB or SSI benefits. (R. at 23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Christian's main argument is that the ALJ's residual functional capacity determination is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-12.) First, Christian argues that the ALJ improperly substituted his opinion for that of clinical psychologist Lanthorn. (Plaintiff's Brief at 5-8.) Christian next argues that the ALJ's physical residual functional capacity finding is not supported by substantial evidence because he failed to properly consider the medical opinions of record. (Plaintiff's Brief at 8-12.) In particular, Christian notes the ALJ's failure to address the August 2005 spinal imaging. (Plaintiff's Brief at 9-10.) Such an error, Christian contends, constitutes a failure to take all relevant evidence into account. (Plaintiff's Brief at 11.) Additionally, Christian argues that the ALJ erred by failing to sufficiently explain his rationale for accepting the opinions of the state agency physicians. (Plaintiff's Brief at 10-12.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The Court must not weigh the evidence, as this court lacks the authority to substitute its judgment for that of the Commissioner, provided the decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial

Case 2:08-cv-00047-JPJ   Document 18   Filed 07/28/09   Page 11 of 19   Pageid#: 63

evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained the findings and rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Specifically, the ALJ must indicate that he has weighed all relevant evidence and must indicate the weight given to this evidence. *See Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979). Although an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

The court will first address Christian's contention that the ALJ erred by failing to accord proper weight to Lanthorn's psychological report. (Plaintiff's Brief at 5-8.) After a review of the evidence of record, I agree.

As Christian correctly states, an ALJ may never substitute his or her opinion regarding a claimant's medical conditions for one provided by a medical expert. While the ALJ is correct in stating that Christian was referred to Lanthorn by his attorney for a one-time evaluation, that Christian failed to allege any psychological limitations in

-12-

Case 2:08-cv-00047-JPJ   Document 18   Filed 07/28/09   Page 12 of 19   Pageid#: 64

connection with his applications for DIB and SSI and that Christian had sought no prior psychological treatment, the fact remains that the only opinion from a trained mental health professional contained in the record is that of Lanthorn. Lanthorn opined, among other things, that Christian had a GAF score of 50-55, indicating serious to moderate symptoms or difficulties in social or occupational functioning. He further opined that it would be unlikely that Christian would be able to function effectively in a 40-hour workweek on a regular basis at even simple and repetitive tasks. Additionally, Lanthorn completed a mental assessment, indicating that Christian had either a poor ability or a seriously limited, but not precluded, ability to perform the majority of occupational, performance and personal-social adjustments.

Given these findings, and the fact that Lanthorn provided the only professional mental health opinion, the ALJ should have ordered a consultative psychological evaluation before making his mental residual functional capacity determination if he questioned Lanthorn's findings. However, by rejecting these rather restrictive limitations in the face of no other evidence from a mental health source, the ALJ improperly substituted his opinion for that of a trained mental health professional. "In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on the severity of [Christian's] psychiatric problems for that of a trained professional." *Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D. W.Va. 1985) (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974) & *McLain*, 715 F.2d at 869). As the court stated in *Grimmett*, "[t]he absence of any treatment for impairments as serious as those described by [Lanthorn] may provide a basis for questioning the severity of the impairments, however, a finding to this effect must be based on *medical evidence*, not

-13-

the opinion of a lay person." 607 F. Supp. at 503 (emphasis added).  Instead, as the court found in *Grimmett*, if, on remand, the ALJ questions the validity of Lanthorn's report, he should secure a consultative evaluation.  *See* 607 F. Supp. at 503.

Christian next argues that the ALJ erred by failing to consider spinal imaging results from August 2005.  It is true that the ALJ did not discuss these results in his decision.  In fact, the ALJ expressly stated that "there is no imaging of record."  (R. at 21.)  The ALJ did note that Dr. Humphries's opinion, which he accepted as supportive of his physical residual functional capacity determination, would have changed had imaging revealed degenerative joint or disc disease.  (R. at 21.)  In particular, the ALJ correctly noted that, had such imaging existed, Dr. Humphries would have found that Christian could have performed light work with occasional stooping and crouching.  (R. at 21.)  While the vocational expert testified that there was a significant number of jobs in the national economy that a hypothetical individual with a residual functional capacity for light work could perform, she was not specifically asked about such an individual who could occasionally stoop and crouch.  Nonetheless, for the following reasons, I find that this constituted nothing more than harmless error not requiring remand.  Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error.  *See Austin v. Astrue*, 2007 WL 3070601, at *6 (W.D. Va. Oct. 18, 2007) (citing *Camp v. Massanari*, 2001 WL 1658913 (4th Cir. Dec. 27, 2001) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

Case 2:08-cv-00047-JPJ   Document 18   Filed 07/28/09   Page 14 of 19   Pageid#: 66

Social Security Ruling 85-15 clarifies that stooping, kneeling, crouching and crawling are progressively more strenuous forms of bending parts of the body. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). Social Security Ruling 85-15 further clarifies that some stooping, which is defined as bending the body downward and forward by bending the spine at the waist, is required to do almost any kind of work, particularly when objects below the waist are involved. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991. That Ruling further states that if a person can stoop occasionally, meaning from very little up to one-third of the time in order to lift objects, the sedentary and light occupational base is virtually intact. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991. Social Security Ruling 85-15 further states that crouching, which is defined as bending the body downward and forward by bending both the legs and spine, is required frequently for most *medium, heavy and very heavy jobs*, and an inability to do so would substantially affect the more strenuous portion of the occupational base. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991. (emphasis added.) Therefore, it can be inferred that occasional crouching would be encompassed within the definition of light work. All of this being the case, the ALJ's failure to specifically include these postural limitations in his hypotheticals to the vocational expert or in his formal residual functional capacity finding constitutes, at most, harmless error not requiring remand. When the vocational expert was asked to consider a hypothetical individual of Christian's age, education and work experience, who was limited as set forth in the state agency physicians' residual functional capacity assessment, she testified that such an individual could perform some light work including jobs as a

nonconstruction laborer, a food preparer, a packer, a hand packager, a parking lot attendant, a ticket clerk, some sorters, a flagger, a greeter and a host. This is important because the state agency physicians' assessment, which indicated that Christian could perform the exertional requirements of medium work, limited him to the performance of occasional climbing, stooping, kneeling, crouching and crawling. Thus, I find that it is inconceivable that a different administrative conclusion would have been reached here absent the ALJ's error. *See Austin*, 2007 WL 3070601, at *6 (citations omitted).

Lastly, Christian argues that the ALJ erred by failing to sufficiently explain his rationale for accepting the opinions of the state agency physicians. The failure to adequately address and explain the weight given to all medical reports in the text constitutes a serious error under 20 C.F.R. §§ 404.1527(b), 416.927(b). The lone sentence devoted to the report of the state agency physicians stands in marked contrast to the space devoted to Lanthorn's psychological report and Dr. Humphries's physical examination report. Although brevity in judicial opinions is always commendable, the ALJ's single sentence accomplished little in terms of explaining the weight accorded to Dr. Shahane's and Dr. Phillips's report or the manner in which that report factored into the final determination. However, this error alone does not require a remand. While I believe the ALJ erred by engaging in this stunted analysis, the doctrine of harmless error suggests that such a mistake should not be fatal. As previously noted, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *See Austin*, 2007 WL 3070601, at *6 (citations omitted); *see also Fisher*, 869 F.2d at 1057. In the unreported Western

-16-

Case 2:08-cv-00047-JPJ   Document 18   Filed 07/28/09   Page 16 of 19   Pageid#: 68


nonconstruction laborer, a food preparer, a packer, a hand packager, a parking lot attendant, a ticket clerk, some sorters, a flagger, a greeter and a host. This is important because the state agency physicians' assessment, which indicated that Christian could perform the exertional requirements of medium work, limited him to the performance of occasional climbing, stooping, kneeling, crouching and crawling. Thus, I find that it is inconceivable that a different administrative conclusion would have been reached here absent the ALJ's error. *See Austin*, 2007 WL 3070601, at *6 (citations omitted).

Lastly, Christian argues that the ALJ erred by failing to sufficiently explain his rationale for accepting the opinions of the state agency physicians. The failure to adequately address and explain the weight given to all medical reports in the text constitutes a serious error under 20 C.F.R. §§ 404.1527(b), 416.927(b). The lone sentence devoted to the report of the state agency physicians stands in marked contrast to the space devoted to Lanthorn's psychological report and Dr. Humphries's physical examination report. Although brevity in judicial opinions is always commendable, the ALJ's single sentence accomplished little in terms of explaining the weight accorded to Dr. Shahane's and Dr. Phillips's report or the manner in which that report factored into the final determination. However, this error alone does not require a remand. While I believe the ALJ erred by engaging in this stunted analysis, the doctrine of harmless error suggests that such a mistake should not be fatal. As previously noted, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *See Austin*, 2007 WL 3070601, at *6 (citations omitted); *see also Fisher*, 869 F.2d at 1057. In the unreported Western

District of Virginia case *Manring v. Barnhart*, the court addressed the basic issue before this court and concluded that the failure to thoroughly review all medical opinions is not error worthy of a remand unless there is some suspicion that reviewing all of the opinions would have changed the final disability determination. *See* 2007 WL 201081, at *7 (W.D. Va. Jan. 25, 2007); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001) (stating that an ALJ commits harmless error by failing to refer to the report by name but discussing the substance in the text of the decision). In Christian's case, this precedent is particularly informative. First, the ALJ explicitly stated that the report from the state agency physicians did factor into the final decision. This is not an instance where the ALJ completely ignored or mistakenly omitted this report in its entirety. Secondly, a closer look at the report of the state agency physicians would only confirm the results of the previous exam by Dr. Humphries. A thorough explanation of the state agency report would have simply produced a repetitive recounting of Dr. Humphries's basic findings. While failure to engage in this sort of redundancy is error, it is not the sort of error that requires remand under the doctrine of harmless error.

For these reasons, I find that substantial evidence does not exist in the record to support the ALJ's findings as to Christian's mental residual functional capacity. I recommend that the court deny Christian's motion for summary judgment, deny the Commissioner's motion for summary judgment and remand this case to the ALJ for further consideration consistent with this Report And Recommendation.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the Commissioner's finding as to Christian's mental residual functional capacity;

2. Substantial evidence exists in the record to support the Commissioner's finding as to Christian's physical residual functional capacity; and

3. Substantial evidence does not exist in the record to support the Commissioner's finding that Christian was not disabled.

## RECOMMENDED DISPOSITION

The undersigned recommends that this court deny Christian's motion for summary judgment, deny the Commissioner's motion for summary judgment and remand the case for further consideration in accordance with this Report And Recommendation.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(

c):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in the matter to the Honorable James P. Jones, Chief United States District Judge.

The clerk is directed to send copies of this Report And Recommendation to all counsel of record.

**DATED:** This 28th day of July 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE